UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RUBY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | Case No.: 1:18-cv-00200-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A FRESNO DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS<br><br>[ECF No. 25] |

Plaintiff Steve Ruby is proceeding pro se and in forma pauperis in this action filed under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674.

Currently before the Court is Defendant's motion to dismiss, filed February 8, 2019.

**I.**

**INTRODUCTION**

This action is proceeding on Plaintiff's claim under the FTCA against the United States of America alleging that prison officials failed to use appropriate force to quell a prison disturbance and, as a result, Plaintiff was assaulted by other inmates.

As stated above, the United States has filed a motion to dismiss the action for lack of subject matter jurisdiction pursuant to the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).

Plaintiff filed an opposition on April 30, 2019, and Defendant filed a reply on May 6, 2019. Accordingly, Defendant's motion to dismiss is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## DISCUSSION

### A. Underlying Allegations

On December 9, 2013, Plaintiff arrived at the United States Penitentiary in Atwater (USP-Atwater) where the incident at issue took place.

On July 24, 2015, at 12:25 p.m., Plaintiff was attacked by over 100 hostile inmates. Plaintiff was stabbed four times and beaten with a four-foot-long piece of steel causing severe injury and reconstruction surgery to his arm. The incident took place while prison officials stood by and watched. The attack could have been avoided had prison officials implemented Bureau of Prisons (BOP) policy to use immediate force.

Prison officials were located not only adjacent to the incident, but high up in a secured location of the gun tower. The gun tower is heavily armed with assault rifles, shot guns, and explosives. In addition, non-lethal chemical explosives were available.

On this date, Plaintiff was outside on the recreation yard at USP-Atwater. "He noticed a group of violent looking inmates who had no other purpose but to kill all white inmates. At this time prison officials saw the intimidating inmates and locked all prisoners inside the prison recreation yard. Thus, Plaintiff had no exit. At this time Plaintiff was attacked by Mexican Nationals under illegal reentry charges. In the center of the recreation yard is a gun tower. The gun tower is used to quell disturbances just like the one Plaintiff was facing. The gun tower is outfitted with lethal weapons, however, staff failed to implement the use of firearms. They even failed to fire a warning shot. At the base of the gun tower are sand bags. The sand bags are for warning shots, so a bullet will not deflect and harm others; prison officials breached the[ir] duty by not even firing a warning shot." (Compl. at 8, ECF No. 1.)

///
///

**B. Legal Standard-Rule 12(b)(1) Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Rule 12(b)(1) of the Federal Rules of Civil Procedure permits dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter, the Court may consider the pleadings, as well as jurisdictional facts supplied by affidavit, declaration, or other evidence properly before the Court. Green v. United States, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011). The party asserting subject matter jurisdiction usually bears the burden of establishing proper jurisdiction. Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the discretionary function exception is invoked, the government bears the burden of establishing that the exception applies. Navarette v. United States, 500 F.3d 914, 916 (9th Cir. 2007); Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. 2005).

**C. Discretionary Function Exception of the FTCA**

The FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, waives the sovereign immunity of the United States for certain torts committed by federal employees. F.D.I.C. v. Meyer, 510 U.S. 471, 475-76 (1994). "That waiver, however, is limited. Liability cannot be imposed if the tort claims stem from a federal employee's exercise of a 'discretionary function.'" Alfrey v. United States, 276 F.3d 557, 561 (9th Cir. 2002) (citations omitted). The discretionary function exception applies for "[a]ny claim . . . based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Title 28 U.S.C. § 2680(a) provides:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain

governmental activities from exposure to suit by private individuals." <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808 (1984) (discretionary function exception barred airline action against the government for negligent aircraft inspection).

The Supreme Court applies a two-part test to determine whether an action is discretionary and fails within the discretionary function exception to the FTCA. <u>Berkovitz v. United States</u>, 486 U.S. 531, 536-37 (1988). First, the court must "determine whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action." <u>Green v. United States</u>, 630 F.3d at 1249 (citing <u>Terbush v. U.S.</u>, 516 F.3d 1125, 1129 (9th Cir. 2008)). "If the government action did involve choice or judgment, the second step is to determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy.'" <u>Id.</u> "The focus of the inquiry is not the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." <u>United States v. Gaugert</u>, 499 U.S. 315, 325 (1991). "When a statute, regulation, or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Alfrey</u>, 276 F.3d at 562 (internal citations omitted).

Defendants argue that Plaintiff's claim is barred by the discretionary function exception. Defendants specifically argue that there is no statute, regulation, or policy that dictates when prison staff must use force, or what kind of force staff must use, in any given situation. The rules governing the Bureau of Prisons' (BOP) use of force are set forth in 28 C.F.R. § 552.20 et seq., and two BOP Program Statements – Program Statement 5566.06 ("Use of Force and Application of Restraints") and Program Statement 5500.12 ("Correctional Services Procedures Manual"). Del Re Declaration ¶ 4, ECF No. 25-3.[1]

---

[1] Gerald Del Re, is a Correctional Services Specialist (CSS) employed by BOP, at the Western Regional Office, in Stockton, California. Del Re Declaration ¶ 1. As a CSS, he is responsible for providing training and guidance to prison staff throughout the Western Region, including USP Atwater, regarding security operations and use of force. <u>Id.</u> He also conducts after action reviews following uses of force, and he is familiar with the security operations of federal prisons, and with BOP policy governing the use of force. <u>Id.</u>

4

### 1. Challenged Action Involves Element of Judgment or Choice

Under 28 C.F.R. § 552.20, "[t]he Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed" and "[w]hen authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order."

28 C.F.R. § 552.21 distinguishes between immediate and calculated uses of force. With regard to immediate use of force, "[s]taff may immediately use force and/or apply restraints when the behavior described in § 552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order." 28 C.F.R. § 552.21(a). A calculated use of force, on the other hand, "occurs in situations where an inmate is in an area that can be isolated (e.g., a locked cell, a range) and where there is no immediate, direct threat to the inmate or others. When there is time for the calculated use of force or application of restraints, staff must first determine if the situation can be resolved without resorting to force (see § 552.23)." 28 C.F.R. § 552.21(b).

Under 28 C.F.R. § 552.22, "[s]taff ordinarily shall first attempt to gain the inmate's voluntary cooperation before using force" and "[s]taff use only that amount of force necessary to gain control of the inmate." 28 C.F.R. § 552.22(a), (c).

The BOP's Program Statement 5566.06 ("Use of Force and Application of Restraints") provides that "[f]orce will ordinarily be used only when attempts to gain voluntary cooperation from the inmate have not been successful" and "[w]hen force is used, it will be only the amount of force required to subdue an inmate, or preserve or restore institution security and good order." Program Statement 5566.06 at 2. The Program Statement also provides that "immediate or unplanned use of force by staff is required when an inmate is trying to self-inflict injuries which may be life-threatening or is assaulting any other person to include other inmates" and "staff must use common sense and good correctional judgment in each incident to determine whether the situation allows for implementation of calculated or immediate use of force procedures." Program Statement 5566.06 at 4.

///

///

The BOP's Program Statement 5500.14 ("Correctional Services Procedures Manual"), Chapter 7, provides that the use of firearms is permitted only when deemed necessary to prevent escapes, prevent loss of life or serious physical injury, and maintain or restore control of a correctional institution. Del Re Declaration ¶ 5. It also provides that "[t]he use of firearms is prohibited if force other than firearms appears reasonably sufficient to accomplish law enforcement purposes." The use of force is considered a last measure and is reserved for those situations when the use of firearms is deemed necessary: "the necessity to use firearms arises when all available means of achieving the law enforcement purpose have failed or are likely to fail." Program Statement 5500.14, section 702.

Plaintiff argues that the BOP Program Statements required the use of immediate force to quell the prison disturbance. (Pl. Opp'n at 3, 9, ECF No. 31.) Contrary to Plaintiff's contention, 28 C.F.R. § 552.21(a) provides only that staff "may" use force to gain control of a situation in which an inmate is assaulting another inmate. Although Plaintiff reasons that "if a policy authorizes the use of force, it means the same thing as mandating the use of force," Plaintiff fails to cite and the Court has not found any statute or regulation that mandates what an officer must do when faced with an inmate riot. See Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) (referring to "[t]he traditional, commonly repeated rule that *shall* is mandatory and *may* is permissive").

Nonetheless, as previously stated, BOP Program Statement 5566.06 provides that "immediate or unplanned use of force by staff is required when an inmate is … assaulting any other person to include other inmates." However, it does not mandate any particular type of immediate or unplanned force, and, in this instance, the BOP exercised its discretion and used pepper spray to quell the disturbance. The use of pepper spray is clearly a use of force. See, e.g., Headwaters Forest Defense v. Humboldt County, 276 F.3d 1125, 1131 (9th Cir. 2002) (denying qualified immunity on claim that application of pepper spray on activists was use of force in violation of the Fourth Amendment); see also Furnace v. Sullivan, 705 F.3d 1021, 1027-31 (9th Cir. 2003) (denying qualified immunity on claim that use of pepper spray on prisoner constituted excessive force in violation of the Eighth Amendment).

///

Plaintiff has failed to provide any regulation or Program Statement that requires the use of a warning shot or lethal force to quell a prison disturbance. See Buchanan v. United States, 915 F.2d 969, 971 (5th Cir. 1990) (stating that "no statute, regulation, or policy, or indeed could, specifically prescribe a course of action for prison officials to follow in every prison uprising."); Del Re Declaration ¶ 4. Gerald Del Re declares that "[t]he Bureau of Prisons employs a number of tools and tactics short of lethal force / firearms, to include communication and the use of less than lethal force and munitions. It is reasonable for prison staff to use less than lethal munitions to quell a disturbance before resorting to lethal force / firearms. I understand a MK-9 (pepper spray) was successfully utilized to end this disturbance, showing that less than lethal force was effective in this situation, without the need to use lethal force. Had lethal force been used, it is likely one or more inmates would have been killed or seriously wounded. Instead, due to the use of sound correctional judgment, staff were able to resolve this situation without the loss of life, in a short amount of time, and with minimal injuries." Del Re Declaration ¶ 6. Thus, the officer's decision involves "an element of judgment or choice," informed by the circumstances surrounding the riot. See Alfrey, 276 F.3d at 561.

2. Challenged Action is Type Congress Meant to Protect Under Discretionary Function Exception

"Prison officials' minute-to-minute decision making in the chaotic circumstances of a riot is a classic example of an activity requiring the exercise of discretion . . . . We do not believe that Congress meant for judges, through hindsight, to second-guess such difficult decisions." Buchanan v. United States, 915 F.2d 969, 972 (5th Cir. 1990); see also Cohen v. United States, 151 F.3d 1338, 1345 (11th Cir. 1998) (discretionary function exception precludes suit based on allegedly improper decision in classifying prisoners and placing them in institutions, even if resulted in one inmate attacking another inmate); Calderon v. United States, 123 F.3d 947, 949-50 (7th Cir. 1997) (discretionary function exception precluded FTCA claim by federal prisoner inmate who was injured in assault by another inmate). Furthermore, "[b]alancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy." Calderon, 123 F.3d at 951 (citing Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) (holding that prison administrators should be afforded wide-ranging deference in implementing and

executing policies because discretion is needed to preserve internal discipline and maintain institutional security)). In addition, several courts have determined that inmate safety and the use of force, even if incorrect, are subject to the discretionary function. See, e.g., Alfrey v. United States, 276 F.3d at 562-65 (holding that correctional officers have discretion in determining how to respond to inmate threats); Buchanan v. United States, 915 F.2d at 971-72 (holding that an emergency response to a prison uprising is covered by the discretionary function exception to the FTCA); Cohen v. United States, 151 F.3d at 1340 (reversing judgment in favor of prisoner who brought an FTCA action for injuries sustained as the result of an attack by another inmate); Norris v. United States, No. 5:10-CT-3026-FL, 2013 WL 756293, at *4-5 (E.D.N.C. Feb. 23, 2013) (decision about when and how to intervene in an altercation between two inmates is a policy related determination); Wesley v. United States, No. 3:15CV0598-TSL-RHW, 2017 WL 831252, *3-4 (S.D. Miss. Feb. 13, 2017) (BOP engages in discretionary function when dealing with situations involving inmate altercation in recreation cage); Byrd v. United States, No. 1:09cv1208 (CMH/JFA), 2010 WL 4922519, at *5 (E.D. Va. Nov. 29, 2010) ("Where, as here, a federal prisoner sues under the FTCA for injuries caused by a fellow inmate, circuit courts which have reviewed such claims uniformly hold that the action is barred by the discretionary function exception.").

In sum, based on the applicable regulations and policy statements set forth above, the Court finds that the BOP's action (or failure to act) challenged by Plaintiff under the FTCA was discretionary, and the decisions made by BOP officials were grounded in public policy, namely, assuring the safety and security of inmates and efficiently managing the prison. Therefore, Defendant's motion to dismiss the FTCA claim for lack of subject matter jurisdiction should be granted.

## IV.

## CONCLUSION

Accordingly, it is HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a Fresno District Judge to this action.

Further, for the reasons explained above, it is HEREBY RECOMMENDED that Defendant's motion to dismiss the action for lack of subject matter jurisdiction be granted.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __May 10, 2019__

UNITED STATES MAGISTRATE JUDGE